**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DUMAURIEA MCGEE (#718008)** | **CIVIL ACTION** |
| **VERSUS** | |
| | **22-68-BAJ-RLB** |
| **TRENT BARTON, ET AL.** | |

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 27, 2023.

                                                  **RICHARD L. BOURGEOIS, JR.**
                                                  **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DUMAURIEA MCGEE (#718008)**  CIVIL ACTION

**VERSUS**

**TRENT BARTON, ET AL.**  22-68-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 32). The Motion is opposed. *See* R. Doc. 34.

The *pro se* Plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), filed this proceeding pursuant to 42 U.S.C. § 1983 against Trent Barton, Marcus Jones, Gabriel Hebert, John Orr, Darrel Vannoy, Tim Hooper, Carlton Nettles, Jeremy McKey, Medical Director at LSP, State of Louisiana through Louisiana Department of Public Safety and Corrections, and various Jane and John Does, complaining that his constitutional rights were violated due to the use of excessive force and deliberate indifference to his serious medical needs[1]. He seeks monetary, declaratory, and injunctive relief.

Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's claims against them in their official capacities. Section 1983 does not provide a federal forum for a litigant who seeks monetary damages

---

[1] Defendants Trent Barton, Darrel Vannoy, Jeremy McKey, Medical Director at LSP, and all Jane and/or John Doe defendants have not been served. *See* R. Doc. 25. Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Although a *pro se* plaintiff may rely on service by the U.S. Marshal if requested, he may not remain silent and do nothing to request or effectuate such service. No further action has been taken by the plaintiff to identify or serve these defendants. Accordingly, defendants Trent Barton, Darrel Vannoy, Jeremy McKey, Medical Director at LSP, and all Jane and/or John Doe defendants should be dismissed for failure to serve them as required by Rule 4(m).

against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, to the extent the plaintiff may be asserting claims against defendants in their official capacities for monetary damages, any such claims are subject to dismissal.

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*.

at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

## Plaintiff's Allegations

In his Complaint, as amended, Plaintiff alleges the following: On March 25, 2020, the plaintiff was being transported to the treatment center by defendant Marcus Jones due to a laceration on the plaintiff's forehead. Plaintiff's wrists and ankles were shackled, and defendant Jones pulled and dragged the plaintiff, causing him to trip as he attempted to keep up with defendant Jones' pace. The plaintiff implored defendant Jones to walk slower and in response, defendant Jones pushed the plaintiff then threw him down on the concrete. As the plaintiff attempted to get up, defendant Jones placed his full body weight on top of the plaintiff and began to choke the plaintiff while kneeing him in the ribs. The plaintiff yelled in agony as his left shoulder was dislocated. By the time defendant Jones dragged the plaintiff to the treatment center he was in severe pain.

Upon arriving at the treatment center, the plaintiff informed defendant Jones that he could not move his left arm and that he was worried that it might be broken. Plaintiff requested the defendant Jones ensure that his arm was examined and in response, defendant Jones said nothing and began using his phone. Defendant Trent Barton arrived at the treatment center and the plaintiff explained his injury, requested that defendant Barton ensure that his arm was examined, and requested that he be escorted back to his dorm by someone other than defendant Jones. In response, defendant Barton scoffed.

Defendant's forehead was examined by a nurse, defendant Jane Doe (1). However, when the plaintiff requested that his arm also be examined, defendant Doe looked towards defendants Jones and Barton who shrugged their shoulders in return. The plaintiff's arm was not evaluated.

Plaintiff was escorted back to the main prison by defendant Jones who again threw the plaintiff to the ground, placed his body weight on top of plaintiff, and administered a choke hold. Defendant Jones then picked up the plaintiff, threw him to the other side of the walk, and choked him before dragging the plaintiff into the main prison.

Following the incident, the plaintiff made numerous requests for medical care and for the return of his legal work. The plaintiff's requests were ignored. Finally, on April 16, 2020, the plaintiff flagged down defendant EMT Jane Doe (1) and explained his constant pain, loss of strength, loss of range of motion, and trouble performing everyday activities. Defendant Doe, through the cell bars, assured the plaintiff that his shoulder was not dislocated. Plaintiff requested to see a doctor and for x-rays to be completed. Defendant Doe refused further treatment and told the plaintiff that someone would follow up on the plaintiff's condition.

The plaintiff continued to request treatment for his arm. On May 19, 2020, the plaintiff was able to flag down another EMT. Plaintiff explained his pain and related symptoms to

defendant EMT John Doe (2) who confirmed that the plaintiff's shoulder was not dislocated. The plaintiff again requested to see a doctor and for x-rays to be done and was again informed that someone would follow up with him.

The plaintiff's shoulder injury did not improve, and his requests for medical attention were ignored by John Doe (3). Plaintiff then filed a grievance regarding the lack of treatment, which was denied at both steps by defendants Carlton Nettles and Jeremy McKey.

On July 19, 2021, the plaintiff seen by defendant EMT John Doe (4). He was again assured that his shoulder was not dislocated that that someone would follow up. The plaintiff was seen by defendant EMT John Doe (5) on July 30, 2021, and was told the same thing. Plaintiff told EMT Doe that he had been told the same thing for over a year, but something must be wrong even if his shoulder was not dislocated.

X-rays of the plaintiff's left shoulder were taken on August 4, 2021. The plaintiff was transported to UMCNO on August 10, 2021, for an MRI. Additional x-rays were taken on October 4, 2021, and the plaintiff began physical therapy on October 13, 2021. On November 12, 2021, a CT scan was completed at UMCNO. The plaintiff was seen by Dr. Stuart at UMCNO on January 10, 2022, at which time the plaintiff was informed that surgery would be required to repair his left shoulder, and that prompt medical care would have eliminated the need for surgery or lessened the severity of the plaintiff's condition.

More scans were completed at UMCNO and surgery was completed on June 9, 2022. Plaintiff underwent an "Arthroscopy left shoulder glenoid/humerous reconstruction with allograft." He continues to have pain in his shoulder.

## Qualified Immunity

In response to the plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims[2]. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that Defendant's motion should be granted, in part. Plaintiff's allegations, accepted as true, fail to state a claim for deliberate indifference to his serious medical needs but do state a claim for excessive use of force.

## Juridical Person

With regards to the Louisiana Department of Public Safety and Corrections, section 1983 only imposes liability on a "person" who violates another's constitutional rights under color of

---

[2] Defendants additionally assert that the plaintiff's claims prescribed prior to filing suit. Though defendants' Motion cites to the plaintiff's Amended Complaint (R. Doc. 13) for the various dates the plaintiff's grievances were allegedly filed and the dates responses were allegedly received, none of these dates are found in the plaintiff's Amended Complaint or in any other place in the record. As such, defendants' argument regarding prescription will not be addressed.

law. In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether a person or entity can be sued. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as an "entity to which the law attributes personality, such as a corporation or partnership." *See* La. Civ. Code Ann. art. 24. The Department of Public Safety and Corrections is not a "person" under § 1983. *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) (per curiam) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–71 (1989)). Because the Department of Public Safety and Corrections is not a "person" suable under § 1983, Plaintiff cannot plead a plausible § 1983 claim against it.

### Excessive Force

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding this,

the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

In the instant matter, the allegations of the plaintiff's Amended Complaint state a claim for excessive use of force by defendant Jones. Plaintiff alleges that he was pulled, dragged, thrown to the ground, had the defendant's body weight placed upon him, struck with the defendant's knee, and choked while being transported to the treatment center and again when being transported back to the main prison. Plaintiff further alleges that his shoulder was severely injured due to the force used by defendant Jones.

The allegations of the plaintiff's Amended Complaint do not reveal the need for the use of any force. Plaintiff alleges that he was attempting to keep up with defendant Jones and when he was unable to do so, defendant Jones employed a use of force that was excessive for the circumstances alleged. As such, defendants' Motion should be denied in this regard.

**Deliberate Indifference**

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

In the instant matter, the plaintiff has alleged a delay in care which resulted in substantial harm. The plaintiff's shoulder was injured on March 25, 2020; however, despite the plaintiff's continued complaints, no imaging was completed until August 4, 2021. By the time surgical repair was completed, on June 9, 2022, the plaintiff's arm had atrophied and was otherwise deteriorated.

However, the plaintiff has not alleged deliberate indifference on the part of any of the moving defendants since the plaintiff has not alleged that any of these defendants were personally involved in his medical care or the delay in receipt of the same. Plaintiff's alleged statements to Defendants Jones and Barton regarding his injuries were made while he was in the treatment center and being evaluated and treated by John Doe 1. It is not alleged that Defendant Jones and Barton were responsible for medical care in any way. Plaintiff was receiving medical care and reported his injuries directly to medical personnel.

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). The only defendants plaintiff alleges were personally involved in the plaintiff's medical care are the various Jane and John Doe defendants who have never been properly identified or served. Consequently, the plaintiff's claims against these Doe defendants have now prescribed. *See* R. Doc. 36. As such, the defendants' Motion should be granted in his regard.

## Grievances

To the extent the plaintiff asserts that defendant Carlton Nettles, or any other defendant, failed to properly handle his grievances, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings (including informal complaints) properly investigated, handled, or favorably resolved, *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id*. at 373-74.

### *Verbal Abuse*

To the extent the plaintiff complains of harassment, allegations of mere verbal abuse, in the form of threats, insults or harassment, even if true, do not amount to a constitutional

violation. *Orange v. Ellis,* 348 Fed. Appx. 69, 72 (5th Cir.2009); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983).

## Supplemental Jurisdiction

To the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that most of the Plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that Defendants' Motion to Dismiss (R. Doc. 32) be granted, in part, dismissing the plaintiff's claims: (1) for monetary damages asserted against defendants in their official capacities, (2) for deliberate indifference to his serious medical needs, (3) pertaining to the handling of his grievances and informal complaints, (4) pertaining to verbal abuse and/or harassment, and (5) against the Louisiana Department of Public Safety and Corrections, with prejudice. It is further recommended that the plaintiff's claims against defendants Trent Barton, Darrel Vannoy, Jeremy McKey, Medical Director at LSP, and all Jane and/or John Doe defendants be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m). It is further recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims. It is further recommended that, in all other regards, the defendants' Motion be denied, and this matter be referred back to the

Magistrate Judge for further proceedings herein regarding the plaintiffs claim against defendant Jones for excessive use of force.

Signed in Baton Rouge, Louisiana, on April 27, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**